UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT SHEFFER,

       Plaintiff,                        Hon. Paul L. Maloney

v.                                          Case No. 1:19-cv-804

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of Social Security appeals, the undersigned recommends that the Commissioner's decision be affirmed.

## **STANDARD OF REVIEW**

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 39 years of age on his alleged disability onset date. (ECF No. 7-5, PageID.214). He successfully completed high school and worked previously as a laborer and production machine tender. (ECF No. 7-2, PageID.46). Plaintiff applied for benefits on November 17, 2016, alleging that he had been disabled since September 1, 2016, due to chronic obstructive pulmonary disorder (COPD), bronchitis, emphysema, neurofibromatosis, major depressive disorder, high cholesterol, and anxiety. (ECF No. 7-5, 7-6, PageID.214-21, 254).

Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (ECF No. 7-3, 7-4, PageID.135-136, 138-206). Following an administrative hearing, ALJ Lawrence Blatnik, in an opinion dated October 3, 2018, determined that Plaintiff did not qualify for disability benefits. (ECF No. 7-2, PageID.37-48, 54-88). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (*Id.*, PageID.23-27). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also

provide that, if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate he is entitled to disability benefits and he satisfies his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from: degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disorder (COPD)/emphysema, neurofibromatosis, a history of transient ischemic attack (TIA), obstructive sleep apnea, and depression, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (*Id.*, PageID.40-41).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform sedentary work subject to the following limitations: (1) he can lift/carry ten pounds occasionally and less than ten pounds frequently; (2) he can sit for six hours and stand/walk for two hours, but requires the ability to change position every twenty to thirty minutes for three to five minutes while remaining at his workstation; (3) he can occasionally climb ramps and stairs, but can never climb ladders or scaffolds; (4) he can occasionally balance, stoop, kneel, crouch, and crawl; (5) he must avoid all exposure to unprotected heights and moving mechanical parts; (6) he is limited to occasional exposure to extreme heat or cold, humidity and vibrations; (7) he must avoid concentrated exposure to fumes, odors, dusts, gases, and pulmonary irritants; and (8) he can perform simple, routine, repetitive tasks.  (*Id.*, PageID.42).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316.  In satisfying this burden, the ALJ may rely on a vocational expert's testimony.  *Ibid.*

In this case, a vocational expert testified that there existed approximately 144,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (*Id.*, PageID.78-87).  This represents a

significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I.     Listings 12.04 and 12.06

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff argues that he is entitled to relief because the ALJ's decision that he fails to satisfy Listings 12.04 or 12.06 is not supported by substantial evidence.

Listing 12.04 addresses depressive, bipolar and related disorders. Listing 12.06 addresses anxiety and obsessive-compulsive disorders. While these two Listings concern different impairments, the showing necessary to satisfy each is similar. Each Listing contains three separate criteria, identified as A, B, and C criteria. The A criteria examines whether the claimant suffers from an impairment addressed by the Listing. The B and C criteria, on the other hand, assess the severity of any such impairment. To satisfy Listings 12.04 or 12.06, the claimant must satisfy the A criteria and either the B or C criteria.

With respect to these two Listings, the ALJ did not address the A criteria, but instead concluded that Plaintiff could not satisfy the B or C criteria. (*Id.*, PageID.40-41). Plaintiff argues that the ALJ erred by "underestimate[ing] the severity of the B criteria." The B criteria for Listings 12.04 and 12.06 are identical:

  B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

    1. Understand, remember, or apply information.

    2. Interact with others.

    3. Concentrate, persist, or maintain pace.

    4. Adapt or manage oneself.

Plaintiff does not specify which of the B criteria the ALJ allegedly underestimated. Instead, Plaintiff simply asks the Court to re-weigh certain items of evidence and reach a different result. Specifically, Plaintiff cites to treatment notes dated July 1, 2016, which recount that Plaintiff experienced "an elevated LOCUS score[1] of 20 . . . which would indicate a referral in for services as appropriate at this time." (ECF No. 7-8, PageID.632-39). This evidence, however, predates the ALJ's decision by more than two years. As the ALJ observed, treatment notes from December 2017 through June 2018 reveal that Plaintiff, having received treatment and appropriate medication, was faring better and no longer experiencing hallucinations, or suicidal/homicidal ideations. (ECF No. 7-2, 7-11, PageID.44-45, 756-57, 763-69).

---

[1] LOCUS refers to the Level of Care Utilization System for Psychiatric and Addiction Services. *See* Psychiatric Services, available at https://ps.psychiatryonline.org/doi/10.1176/appi.ps.54.11.1461 (last visited on May 28, 2020).

Plaintiff also faults the ALJ for failing to place sufficient weight on an opinion expressed by Dr. Elizabeth Miller that Plaintiff was "unable to keep a job." (ECF No. 7-13, PageID.1029-30). First, the ALJ is not obligated to afford any weight to an opinion that Plaintiff is disabled as such is a matter reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1). Second, Dr. Miller expressed this opinion almost two years before the ALJ's decision. As already noted, however, Plaintiff's condition subsequently improved.

Plaintiff bears the burden to demonstrate that he satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). The evidence cited by Plaintiff fails to establish that he satisfied Listing 12.04 or Listing 12.06 or that the ALJ's decision in this regard is not supported by substantial evidence. Accordingly, this argument is rejected.

**II.        Plaintiff's RFC**

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). The ALJ concluded that Plaintiff can perform a limited range of sedentary work. Plaintiff argues that the ALJ failed to consider certain evidence when determining his RFC.

Plaintiff first argues that the ALJ failed to consider the side effects he experiences from his various medications. The only evidence Plaintiff cites to in support of this argument is his administrative hearing testimony that his medications make him "drowsy." (ECF No. 7-2, PageID.66). Plaintiff did not elaborate on this response or provide any details regarding such. As Defendant correctly notes, however, Plaintiff denied experiencing medication side effects when questioned by his care providers. (ECF No. 7-7, 7-8, 7-9, 7-10, ,PageID.465, 472, 633, 643, 655, 662, 683).

Plaintiff next argues that the ALJ failed to adequately consider that his neurofibromatosis causes him to experience "significant pain." But the portion of the record to which Plaintiff cites (ECF No. 7-7, PageID.400-09) is unpersuasive. Plaintiff cites to treatment notes concerning an October 11, 2016 eye examination, which revealed the presence of a neurofibromatosis nodule. (*Id.*, PageID.400-04). Aside from the presence of this single nodule, the results of this examination were unremarkable. Subsequent treatment notes, dated approximately one year later, indicate that Plaintiff's neurofibromatosis was "stable." (ECF No. 7-12, PageID.878). To the extent Plaintiff argues that he experiences back pain which limits him to a greater degree than the ALJ recognized, Plaintiff cites to no evidence in support thereof. On the other hand, the ALJ cited to several portions of the record which indicate that Plaintiff's lumbar impairments do not limit Plaintiff to a greater degree than recognized by his RFC. (ECF No. 7-7, 7-8, 7-12, 7-13, PageID.373-76, 392, 481, 802, 989).

-9-

Finally, Plaintiff argues that the ALJ failed to consider that he would be absent from work three to four times monthly to attend medical appointments. Plaintiff articulates no argument and cites to no evidence suggesting that his medical appointment schedule is somehow work preclusive. While the ALJ acknowledged that Plaintiff makes this claim, (ECF No. 7-2, PageID.42), Plaintiff has failed to establish that his need to attend medical appointments is work preclusive or otherwise results in a more restrictive RFC.

The ALJ is tasked with determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). While the ALJ may not "play doctor" and substitute his own opinion for that of a medical professional, the ALJ is not required to tailor his RFC assessment to any particular opinion or item of medical evidence. *See, e.g., Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157 (6th Cir., Aug. 18, 2009). Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004). This is precisely what the ALJ in this matter did and the ALJ's RFC assessment is supported by substantial evidence. Accordingly, this argument is rejected.

### III.   Appointment of the ALJ

In *Lucia v. Securities and Exchange Commission*, 138 S.Ct. 2044 (2018), the Court held that Administrative Law Judges (ALJs) of the Securities and Exchange Commission (SEC) had to be appointed to their office in the manner proscribed by the Appointments Clause of the United States Constitution.  *Id.* at 2049-55.  Pursuant to the Appointments Clause, the ALJs in question were required to be appointed by the President, Courts of Law, or Heads of Departments.  *Id.* at 2049-55.  Absent such appointment, the ALJs employed by the SEC lacked the authority to perform their assigned tasks.  *Id.* at 2049-55.  Plaintiff argues that he is entitled to relief because the ALJ in this case was not properly appointed.

In response to the *Lucia* decision, the Commissioner of the Social Security Administration, on July 16, 2018, "ratified the appointments of [the Social Security] ALJs and approved those appointments as her own."  Titles II and XVI: Effect of the Decision in *Lucia v. Securities and Exchange Commission (SEC) on Cases Pending at the Appeals Council*, SSR 19-1p, 2019 WL 1324866 at *2 (S.S.A., Mar. 15, 2019).  The ALJ denied Plaintiff's claim more than two months later, on October 3, 2018.  Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).   Failure to file objections within such time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date May 28, 2020               /s/ Phillip J. Green
                                PHILLIP J. GREEN
                                United States Magistrate Judge